## BYRNE *v.* WELLER.

### Opinion delivered December 14, 1895.

WILLS—CONSTRUCTION—A testator devised all of his property, real and personal, to his wife for life, and in a subsequent clause of the will, after devising certain land to other relatives to take effect upon the wife's death, gave the remainder of his property, real

and personal, to his wife to dispose of as she might desire at her death. *Held*, that by the latter clause the wife took a fee in the remainder in the land.

Appeal from Crittenden Circuit Court in Chancery.

JAMES E. RIDDICK, Judge.

*Watson & Fitzhugh* for appellants.

Mrs. Maddox took the absolute interest in the real property by the will, and the power given her to dispose of it at her death accords with said interest being in her, and the intention of the testator is evidenced by the expression used in the fifth clause of the will. It was manifestly the intention to vest his wife with an *absolute* title to the residue of his property not otherwise specifically devised. The words "at her death" in the fifth clause should be treated as surplusage, and do not limit in any way the power of disposition. The great weight of authority is, even where one is given only a life estate, and the fee is "to be disposed of as she sees fit at her death," that the power is executed, and disposition may be made at any time. 49 Md. 497; 10 S. C. 45. See 2 Wils. 6; 2 Atk. 102; 2 Ver. 181; 3 Ves. 7; 1 Wash. 266. 51 Ark. 61, and 52 *id.* 113, are not in conflict with this doctrine. In those cases the intention was clear, and the remainder was in express terms vested in others, as was also the case in *Giles* v. *Settle*, 104 U. S. ——, and 93 U. S. 326. In 2 Yerger, 558, almost identical language was construed to carry the fee. See, also, 94 Tenn. 27. In this case no remainder was vested in anyone, except the wife; but if it had been attempted, it would have been ineffective, as it would have been inconsistent with the absolute interest vested in the wife, and contradictory.

*Henry Craft* for appellee.

The will vested a life estate in Mrs. Maddox, with the power of disposition *during life*, and, she having

died without having exercised the power, the property reverted to the heirs of the testator. 51 Ark. 61; 93 U. S. 326; 52 Ark. 113; 104 U. S. 291. This is the settled law of Arkansas.

*S. R. Cockrill,* in reply, for appellants.

The gist of the cases relied on by appellees, 51 Ark. 61; 52 *id.* 113; 93 U. S. 326, and 104 *id.* 291, is : Where a power of disposal accompanies a bequest or devise for life, *the power is limited to such a disposition as a tenant for life* can make, unless there are other words clearly indicating that a larger power was intended." In this case the will contains other words *clearly indicating* that the widow should not only have power to dispose of the life estate *but the fee.* We look to the whole will for the testator's intention, and if these are inconsistent provisions, the last one governs, which here is the fifth clause.

*(a.)* The language of the 5th clause embraces *all* the real estate, as well as the personalty not otherwise devised. "Real and personal effects" embrace the whole estate. Schouler on Wills, sec. 509; 3 Watts. 471-3; Cowper, 308.

*(b.)* It is true the testator uses no words of inheritance, but by will a fee may vest without words of inheritance. 3 Ark. 147–193; Sand. & H. Dig. sec. 698; 2 Redf. Wills. p. *335; 107 Mass. 590; Schouler, Wills, sec. 509; 2 Redf. Wills. p. *327.

*(c.)* The authorities are against the position that the grant of a life estate to the widow in the second clause of the will shows the intention to limit her estate throughout. 68 Pa. St. 84; 3 Atk. 486; 3 Watts, 473; 39 Pa. St. 469; 6 Simmons, 568; 58 Pa. St. 429; 144 *id.* 278–285.

*(d.)* The argument that the power of disposal by will is a power of appointment merely, and, as it was not

exercised, that the property goes to the heirs of the testator, is not sustained by the authorities. In this case the power of disposition is broad enough to create a fee, and emphasizes the intention that the fee shall pass. A general devise with power to dispose of the corpus of the estate creates the fee. 109 U. S. 725; 2 Redf. Wills, p. *326, sec. 11; 58 Pa. St., and other cases cited in my associates' brief; 144 Pa. St. 278–285; 3 Ad & El. 128; 23 Ark. 359.

BUNN, C. J. Appellees, the only surviving heirs at law of one J. W. Maddox, deceased, filed the complaint in this cause in the Crittenden circuit court, on the chancery side, against the appellants, the only surviving heirs at law of one Julia A. Waldron, deceased, formerly the wife and widow of said J. W. Maddox, she having died intestate. The subject matter of the litigation is certain property of the estate of said J. W. Maddox, and, to determine the ownership of the same and for partition, the court was asked to construe the will of said J. W. Maddox. Appellants, defendants in the court below, demurred to the complaint; and, the same having fully set forth the provisions of the will and plaintiffs' claim thereunder, the only issue in the case was properly raised by the demurrer. The chancellor overruled the demurrer, and, defendants declining to plead over, decree went against them, and they appealed to this court.

The said J. W. Maddox made the following last will and testament [leaving out all that is not essential to this discussion], to-wit: "Second. After the payment of my funeral expenses as well as my just debts, I give and bequeath to my beloved wife, Julia A. Maddox, my entire property and effects of every character and kind, both real and personal, during her natural life, to use and enjoy any and all the rents and profits of every character and kind lawfully arising therefrom. Third.

It is my will that my lot, being a certain parcel or piece of ground situate, lying and being in the city of Memphis, on the south side of Market street, being a part of lot known and designated on the original plan or plat of Memphis as lot number four hundred and seventy (470), [then follows a particular description of said part of said lot, by metes and bounds] shall, at the death of my beloved wife, Julia A. Maddox, be by her, the said Julia A. Maddox, given to such of the then living children of my brother Henry S. Maddox and my sister Sophia Cole Graves as she, the said Julia A., in the exercise of her judgment, may deem best ; it is my express wish that my wife, the said Julia A. Maddox, shall so dispose of this lot of ground among said children as she may desire.    Fourth.    It is my will that at the death of my beloved wife, Julia A. Maddox, my lot being part of lot No. 123 on Main street (west side) upon which a two-story brick house now stands, shall go and descend jointly to George R. Byrne, the youngest brother of my wife, Julia A. Maddox, and Wesly Edmond Moore, son of George and Londora Moore, each to have and own an undivided one-half interest in the same; and in the event that either the said George R. Byrne or Wesly Edmond Moore, or both of them, should depart this life before arriving at the age of twenty-one years, then and in that event I wish my wife, Julia A. Maddox, to dispose of the interest of the children so dying, in this property, among the living children ·of my brother, Henry S. Maddox, and of my sister, Sophia Cole Graves, in such parts and portions as she may desire.   *   *   *   *   *   Fifth.   The remainder of my goods, chattels and effects of every character and kind, both real and personal, I will and bequeath to my beloved wife, Julia A. Maddox, to dispose of as she may choose and desire at her death.    Sixth.   I do hereby appoint my brother, Henry S. Maddox, and my wife,

Julia A. Maddox, my executor and executrix, to qualify without giving bond or security."

The particular question raised by the demurrer to the complaint is, was the estate of Julia A. Maddox in the "remainder" mentioned in the fifth clause of her husband's will an estate in fee, or for life only?

In regard to the disposition of real estate, and of course of personal property, by will, no technical or particular words of conveyance are necessary, and any words denoting the real intention of the testator will be sufficient, unless they contravene some positive and established rule of construction; and in this state the liberal rule in favor of wills is much emphasized by the statute which does away with the use of many technical words of the common law, even in conveyances by deed. We may also remark, as preliminary to this discussion, that the case of the appellants is somewhat aided by the fact that, under our conveyance laws, *prima facie* every conveyance is to be regarded as carrying the fee, unless express words of limitation to a less estate are used.

The testator, in the second clause of his will, gave to his wife, Julia A. Maddox, a life estate in all of his property, real and personal. The reason of this is made apparent in the clauses following. The testator evidently intended that his wife should enjoy the use of his entire estate during her natural life, and, being childless, and making certain special devises to the children of a brother and sister, he arranged that they should be postponed in enjoyment until the death of his wife. When making these special provisions for the children of his brother and sister, it occurred to him that these special legacies would not cover or take up all the estate, or might not, at all events. So he makes a disposition of this residue, or "remainder," as he calls it, in the fifth clause of his will. The contention of ap-

pellees, in effect, is that the devising words of this fifth clause amount to a reiteration of the general devise for life contained in the second clause, in so far as concerns this residue ; and that the grant of the power to dispose of it at her death is but a grant to dispose of by will; and that the disposition to take effect only after her death is a power or privilege in addition to the devise,—a mere power of appointment; and, this being so, that it necessarily follows that the whole clause, taken together, gives the wife but a life estate in the residue. But, according to the contention of the appellant, the testator here in this fifth clause makes a new disposition of this residue part of his entire estate ; that the power of disposal is not in addition to the devise of the residue, nor cumulative of it, but confers nothing upon her which she did not already have by the terms of the devise, and only emphasizes one of her rights as the devisee of the fee,—the power to dispose as such. If the doctrine of the appellees be the correct one, it may be pertinently asked, why the necessity or even propriety of this reiteration ? Why make use of any additional words or language denoting a disposition to the wife of this residue, since a life estate in it had already been given her in the second clause of the will, for it was only a part of the whole therein devised to her for life ? Why not simply have said, "This remainder or residue to be disposed of by her at her death as she may choose," or words to that effect ?

Useless and unnecessary expressions are sometimes employed, but expressions are not to be construed as surplusage when, by another reasonable and consistent construction, they have a use. Furthermore, if the devising words in the fifth clause of the will enlarge or diminish the estate devised from what is devised in the preceding clauses, it follows that the two are in so far inconsistent,—at least there is a difference,—in which

case the latter controls, and from it we are to gather the true intention of the testator as to the property therein disposed of. If there is any truth in this course of reasing, it follows that we are to determine what estate the wife had in the remainder of the whole estate after the special legacies, not by the language of the second clause of the will, but by that of the fifth—the clause which makes special and particular reference to this remainder. The words of devise of the remainder mentioned in the fifth clause are simple and direct, and there are none expressive of a less estate in the devisee than that of the fee. In such case, even in the case of a conveyance by deed, under the statute, the estate conveyed would be a fee simple; and the statute only, in effect, makes application to conveyances by deed, that which virtually had always been the rule in the case of wills.

It is contended, in effect, by the appellees, that the words expressive of the power of appointment in the fifth clause are themselves words of limitation upon the estate in the remainder therein devised; and this raises the real question at last.

In *Benesch* v. *Clark*, 49 Md. 497, the supreme court lays down the rule on this subject thus: (1) "That where an estate is given to a person generally or indefinitely, with power of disposition, such gift carries the entire estate; and the devisee or legatee takes, not a simple power, but the property absolutely. (2) That when the property is given to a person expressly for life, and there be annexed to such gift a power of disposition of the reversion, then the rule is different, and the first taker takes but an estate for life, with the power annexed." The word "reversion" contained in the second rule, thus announced, is a word of the very greatest importance in its connections, in its influence upon rules of construction. It implies that the devising clause has left something to revert to the testator after

the estate given to the devisee. In the case at bar, as we have seen, no words denoting a reversion to the donor appear; and hence the second rule is not apparently applicable to this case, and therefore the first rule must be. In that case, the words of devise were: "The two houses and lots on Monument street [city of Baltimore] to be disposed with as my wife sees fit, at her decease." And following was the general devise, to-wit: "And also I give and bequeath unto my said wife all my property, real, personal and mixed, of every description, to have and to hold for her benefit, maintenance and comfort, *during life.*" The widow having conveyed one of the lots on Monument street, and then died without attempting to dispose of said lots by will, the administrator of the testator sold the lots as part of his estate, and the sale was approved by the orphans' court. Thus arose the controversy as to the widow's title. Held, that she had a life estate only in the lots. The turning point in the case was, or seems to have been, that, while the first clause gave an estate in the lots generally, the later clause expressly confined it to a life estate, and this was the controlling clause.

In *Fullenwider* v. *Watson*, 113 Ind. 18, the words of devise were "to have, use and enjoy the same as she may choose, and to dispose of the same in such manner as she may desire," and this was coupled with a request that all the property not disposed of by the wife at her death be given to certain named grandchildren of the testator. Now, ordinarily, where the power of disposition or appointment is restricted to go to certain persons or to go in a certain channel, it is considered as a limitation upon the estate of the first, clearly indicating the intention of the testator. However, in that case, it was held that the wife took the fee.

In *Jackson* v. *Robins*, 16 Johnson (N. Y.), 588, it was said that it is laid down "as an incontrovertible

rule that where an estate is given to a person generally
or indefinitely, with a power of disposition, it carries
a fee ; and the only exception to the rule is where the
testator gives to the first taker an estate for life only,
by certain and express words, and annexes to it a power
of disposal. In that particular and special case, the
devisee for life will not take an estate in fee, notwith-
standing the distinct and naked gift of a power of dis-
position of the *reversion.*" The word "reversion" here,
as was said concerning another case, denotes an inten-
tion to reserve the fee, which shall revert to the donor's
estate. In that case, the husband had devised to the
wife all his real and personal estate to hold the same to
her, her executors, administrators and assigns. The
subsequent clause was as follows : In case of the death
of his wife, without giving, devising or bequeathing
by will, or otherwise selling or assigning the estate,
or any part thereof, he doth give and devise all such
estate as should so remain unsold, undevised or unbe-
queathed, to his daughter, Katherine Duer. *Held*, that
the wife had the fee by virtue of the devise to her, and
that the subsequent restriction was void.

In the case of *Grove's Estate*, 58 Pa. St. 429, a
testator gave to his wife as follows: "All my property
and estate, real and personal rights and credits, whatso-
ever may belong to me at the time of my decease, to be
absolutely her own for and during her life, giving her
full power to collect and receive all debts due me, or to
become due, at her pleasure. * * * * * * And
all or any residue of my estate, over and above the
special legacies hereinafter bequeathed, she may dispose
of by her will. * * * * She may sell the real
estate or any part thereof, and execute the necessary
title therefor, which shall be as good to the purchaser
as if made by myself in my lifetime ; but shall always
keep as much secure as will pay the legacies hereinafter

bequeathed, and her estate shall be liable for the amount, to be paid after her death." After giving the special legacies referred to, he continues: "By this I mean that, if my wife should not have enough over the amount of the legacies to live comfortably, she may take or appropriate as much of my estate as she may, from time to time, deem necessary for her comfortable living, and in that case my legatees hereinbefore named shall be satisfied with their proportion of what may be left; or, if she should require the whole of said amount of legacies for her comfortable living, said legatees must be satisfied without receiving any portion thereof. But she cannot by her will bequeath to others any portion or all of said amount of legacies by me herein bequeathed; she can only use said amount of legacies, or such part thereof as she may need for her comfortable living during life." Held (Judge Agnew delivering the opinion of the court), to be an absolute gift of all the estate, real and personal, to the wife except the special legacies, in which she had a life estate. The limitation for her life was inserted but as a means for securing the payment of the pecuniary legacies. That case, in all essential features, was very much like the case now under consideration, and the argument and reasoning of the learned judge is expressly based upon principles and ideas underlying this case in almost every particular.

In *Musselman's Estate*, 39 Pa. St. 469, a testator devised his real and personal property to his wife, "so long as she lives, for her maintenance;" adding: "She shall have her choice to sell it or not, as she believes best for her." And in a subsequent clause, this: "With the third part of his estate she could do and bequeath to whom she pleases." Held, that her interest in the whole estate was a freehold for life, and in the one-third thereof absolutely. The same principle is announced in *Snyder* v. *Baer*, 144 Pa. St. 278, and such seems to be

the tenor of all the authorities we have been able to examine on the subject.

Our conclusion is that the devise of the whole estate for life, in the second clause of the will, was merely for convenience in effecting the more readily the special legacies; and that the meaning and extent of the disposition of the residue of the estate must be found solely in the language of the devise contained in the fifth clause of the will; and, since this language is without words expressly limiting the devise to a less estate than the fee, that the same carries the fee, and the words of disposition therein contained, to take effect after the death of the wife, are surplusage, as the owner of the fee already had the right there attempted to be conferred.    Reversed, and decree for appellants with costs.

RIDDICK, J., being disqualified, did not participate.